ARCHIE V. PERKINS et al., Plaintiffs, *v.* VILLAGE OF MEXICO, Defendant.

Supreme Court, Trial Term, Oswego County, December 5, 1950.

*John B. Mowry* for defendant.

*Yorkey & Yorkey* for plaintiffs.

MALPASS, J. This action has been brought by the plaintiffs to recover for damages to their residence property resulting from the fall of a limb of a large tree located along the

street in the defendant village upon which plaintiffs' property abutted. The action was placed on the trial calendar in Oswego County and upon being reached for trial, it was agreed in open court that the action be tried before the court without a jury.

The plaintiffs in their complaint allege that on or about the 10th day of September, 1948, they formally notified the proper officers of the village in writing that the tree in question had become rotten and was dangerous to life and property and that thereafter on October 13, 1948, during a wind and rain storm in the defendant village a large limb, part of the tree, blew off from the tree and fell upon the house and lawn of plaintiffs causing the damage for which the plaintiffs seek in this action to recover. These allegations of the plaintiffs' complaint were undisputed as was also the allegation that the defendant village through its officers failed to do anything to remove the danger resulting from permitting the tree to stand in its decayed condition.

The plaintiffs claim that the failure of the defendant to act after having knowledge of the rotten and decayed condition of the tree amounted to negligence on the part of the village for which the defendant is liable. The plaintiffs have served the proper formal notice of claim so that their right to maintain the action insofar as such notice is required by section 50-e of the General Municipal Law is concerned is established.

The defendant denies any legal liability on its part to pay to the plaintiffs upon the ground, first, that the tree was not within the custody or control of the defendant but was the property and within the exclusive custody and control of the plaintiffs. The defendant further asserts that its liabilities and duties with respect to the tree extend only to the public while using the street as a public highway and that the plaintiffs were guilty of contributory negligence in permitting the tree in its defective, rotten and decayed condition to remain in a position where it would endanger the plaintiffs' property.

The plaintiffs claim that the tree was located within the limits of the highway and that the plaintiffs had no interest in that portion of the street within the boundary limits of the street.

The defendant asserts that the plaintiffs were the owners of the land situated in the highway to the center of the street and that, therefore, the plaintiffs had full custody and control of the tree.

The description in the deed to the plaintiffs is as follows: '' All That Tract or Parcel of Land, situate in the Village of

Mexico, County of Oswego, State of New York, being Lot No. Sixty-Four (64) of the Twentieth (20th) Township of Scribas Patent, bounded northerly by lands formerly owned by Phineas H. Castle, and now owned by James Campbell; on the east by the Mill Pond made by Salmon Creek; on the south by lands owned by Mrs. Joseph Day (formerly) and on the West by Lincoln Avenue (formerly Water Street) containing 2.13 acres of land more or less. It is hereby intended to convey the same premises described in deed from Lillian S. Osborn to Ida E. Bracy, dated December 3, 1912 and recorded in Oswego County Clerk's Office January 6, 1913 in Book 282 of Deeds at Page 324 and being the same premises conveyed to grantors by Edson F. Welden and wife and recorded in Oswego County Clerk's Office October 19, 1944 in Liber 419 of Deeds at Page 121.''

In *Van Winkle* v. *Van Winkle* (184 N. Y. 192) the court said (pp. 203–204): '' The general rule, both in England and in this state, is that the fee of the soil of the highway is presumed to belong to the adjoining owners and that a person holding land bounded on a highway between two estates is *prima facie* the owner to the center of such highway subject to the easement of the public to the right of way, but that such presumption can be rebutted by an express provision in the deed to the effect that the fee to the highway was not intended to be conveyed, or by the use of such words as necessarily excludes the highway from the description of the premises conveyed, as where the description of the premises is bounded upon the exterior line of a highway or commences at a point upon one side thereof and thence runs along the side to a point specified, but where the premises are bounded by, on or along a highway, or running along a highway without restricting or controlling words, the instrument must be construed as conveying the grantor's title in the land to the center of the highway. The commencement of the description of premises at a corner or a point particularly specified is always considered important, for ordinarily more attention is given by the parties to the locating of the point of commencement of the description than to the other points, but it is not conclusive, and where it is inconsistent with the other lines described, which show an intent to include or exclude the fee of the highway, effect will be given such intent; and where there is ambiguity with reference to the description or to the commencing point, or where there is doubt with reference to the intent of the grantor, the pre-

sumption that the fee was intended to pass will prevail; for in such case the construction must be most favorable to the grantee.''

In *Matter of City of New York* (209 N. Y. 344), Judge HISCOCK, writing for a unanimous court, reaffirms the general principle regarding the interpretation to be given to language such as is contained in the deed to the plaintiffs and at page 347, says: '' There is no dispute concerning the general principles which govern the interpretation of a conveyance which bounds and describes lands by reference to a public highway. The language is to be interpreted most favorably in favor of the grantee, and under ordinary circumstances, where the conveyance is of a lot abutting on a highway or where the descriptive lines run to or along such highway, the presumption is of an intent on the part of the grantor to convey title to the center of the highway.''

And again at page 348: '' It is again well settled that the starting point in such a description is of great importance, and while it has been said that its effect is not conclusive but must yield where it is inconsistent with other lines in the description (*Van Winkle* v. *Van Winkle*, 184 N. Y. 193, 204), it must control the other parts of the description at least in the absence of some irreconcilable inconsistency. (*White's Bank of Buffalo* v. *Nichols*, 64 N. Y. 65, 71.)''

The description of the property contained in the plaintiffs' deed in addition to the boundaries as therein set forth contains a recital referring to the property as the same premises described in a deed from Lillian Osborn to Ida E. Bracy dated December 3, 1912. An examination of the abstracts of title, which have been received in evidence, discloses similar recitals in each conveyance referring to the property as the same premises conveyed in former deeds. Among these prior deeds is a deed given by Francis S. Stone and wife to Lucy A. Holden dated September 19, 1866, and recorded September 20, 1866, which contains the following description: '' All that tract or parcel of land situate in the Town of Mexico, County of Oswego and State of New York, being known and distinguished as part of lot Number sixty-four (64) in the twentieth township of Scribas Patent, *Beginning at a stake in the middle of the street which intersects the Oswego road near Goits Mill in the Village of Mexico* ''.

It was conceded by the parties that the street leading from Goits Mill is the same street later known as Water Street and

presently known as Lincoln Avenue in the village of Mexico, which street is the westerly boundary of plaintiffs' property. The conclusion is irresistible that the owners of this property have at all times since 1866 had fee title to the center of the highway. The plaintiffs being the owners of the fee to the center of the street, own the land subject to the paramount easement of the public to make use of the street for street purposes but the plaintiffs retain the right to make any use of the land which would not interfere with its use as a public highway. (*Robert* v. *Sadler,* 104 N. Y. 229; *Osborne* v. *Auburn Tel. Co.,* 189 N. Y. 393; *Town of Amherst* v. *Tide Water Oil Sales Corp.* 241 App. Div. 912.) It has been held that in the absence of any statutory or municipal regulation to the contrary, a tree growing along the highway in front of property, the owner of which has fee title to the center of the highway, belongs to such owner of the property and that he is liable for any injuries to travelers upon the highway who suffer damages by reason of the tree becoming dangerous to users of the highway because of the owner's negligence. (*Weller* v. *McCormick,* 52 N. J. L. 470.) Likewise it has been held that an owner of real property who, with knowledge of its condition, allows a decayed tree to remain on his property in such a position as to damage the buildings of an adjoining owner when it fell, is guilty of negligence (*Gibson* v. *Denton,* 4 App. Div. 198). In the case of *Village of Cattaraugus* v. *Johnson* (139 Misc. 368) it was held that the owner of the fee to the center of the highway was the owner of a tree located within the street limits and could not be penalized for cutting down a tree so located even though the Village had passed an ordinance providing for such penalty. In this case the court said at page 379: "there is nothing in the statute that gives the village board authority to penalize the owner for cutting down his own tree. This would not apply if the village owned the fee of the street."

This case was affirmed by the Appellate Division, Fourth Department (233 App. Div. 799), and would seem to establish the law applicable to the instant case. To the same effect is the case of *Village of Lancaster* v. *Richardson* (4 Lans. 136).

The provisions of the Village Law [§ 89, subd. 43; § 329-d] to which plaintiffs have called attention in an effort to establish that the defendant village had exclusive control of the tree in question do not, in my opinion, have that effect. These provisions of the statute are permissive and empower the village board of trustees, in their discretion, to adopt certain ordinances which might have

the effect of giving them the exclusive control over trees similar to the one involved in this action. There was no evidence that the trustees of the defendant village ever adopted any such ordinances or legally assumed the authority permitted under these sections of the Village Law and in the absence of such prohibitory ordinances it must be held that the plaintiffs had control over the tree in question.

This action has been brought on the theory of negligence on the part of the defendant. There is no question but that if a person had been using the highway at the time and received an injury to his person or property as a result of the falling of the tree and was himself free of contributory negligence, the defendant village would be liable to respond in damages. The plaintiffs, however, were not using the street at the time of the injury. The plaintiffs' property was damaged because of the falling of a decayed limb from a tree over which the plaintiffs had ownership and control. The plaintiffs were required to exercise reasonable care to protect their residence property from damage resulting from the fall of the tree and they cannot evade this responsibility by notifying the village and demanding that the village remove the danger. Plaintiffs' failure to do anything to protect their property amounted to contributory negligence.

The defendant's motion for a nonsuit and dismissal of the complaint should be granted and an order to that effect may be entered herein upon this decision with costs.